**Galin E. FRYE, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 70504.**

Missouri Court of Appeals, Western District.

Jan. 29, 2013.

Emmett D. Queener, Columbia, MO, for appellant.

Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before Special Division: THOMAS H. NEWTON, Presiding Judge, JOSEPH M. ELLIS, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

This appeal follows the United States Supreme Court's vacation of our opinion in *Frye v. State*, 311 S.W.3d 350 (Mo.App. W.D.2010) (*"Frye I"*) and remand of the case to this court to determine state law questions bearing on the federal question of *Strickland*[1] prejudice where ineffective assistance of counsel is claimed in connection with plea negotiations. *Missouri v. Frye*, 566 U.S. ——, 132 S.Ct. 1399, 1410–11, 182 L.Ed.2d 379 (2012) (*"Frye II"*). In *Frye I*, we reversed a motion court's judgment rejecting a Rule 24.035 motion claiming ineffective assistance of counsel where trial counsel failed to communicate a plea offer. *Frye I*, 311 S.W.3d at 361.

Having resolved the state law questions remanded to this court by the United States Supreme Court, we again reverse the motion court's judgment and remand this matter for further proceedings as hereinafter described.

### Factual and Procedural Summary[2]

On August 14, 2007, the State charged Frye with one count of the class D felony of driving while his driving privilege was revoked in violation of section 302.321.[3] Frye had previously been convicted of three misdemeanor driving while revoked charges on May 21, 2004, April 20, 2006, and February 10, 2006.

Frye's preliminary hearing was scheduled for November 9, 2007. Frye contacted counsel the day before to inform him that he could not attend the hearing. Trial counsel appeared on Frye's behalf and received a continuance of the preliminary hearing to January 4, 2008. Frye had no

---

1. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

2. The factual history is drawn from *Frye I* but is repeated here as *Frye I* has been vacated.

3. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

other scheduled court appearances between November 9, 2007, and January 4, 2008.

On November 15, 2007, the State sent Frye's trial counsel a written plea offer ("Offer"). The Offer was file stamped as received in trial counsel's office on November 19, 2007. The Offer stated:

> My recommendation is a [sic] follows: 3 and defer, on the felony with 10 days "shock" in the Boone County Jail; *OR* 90 days to serve on an amended misdemeanor in the Boone County Jail.
>
> I am going to subpoena witnesses for the preliminary hearing on January 4, 2008. I will need to know if Mr. Frye will be waiving [sic] to preserve the offer by noon on December 28, 2007.

Trial counsel's highlighting of, and other pen marks on, the written Offer, coupled with trial counsel's testimony at the post-conviction hearing, confirm that trial counsel actually received and read the Offer approximately one week after it was mailed.

Frye testified at the post-conviction hearing that he had no knowledge of the Offer until after he was convicted, sentenced, and incarcerated.[4] At the time of the Offer, Frye lived in St. Louis, Missouri. Trial counsel had Frye's mailing address. Frye testified at the post-conviction hearing that during the Offer window he did not see or speak with trial counsel and that his mailing address did not change.

Trial counsel testified at the post-conviction hearing that trial counsel could not recall whether he had communicated the Offer to Frye. Trial counsel testified that there was no correspondence in his file to indicate any effort was made by his office to mail the Offer to Frye. Trial counsel could not recall speaking with, seeing, or ever attempting to contact Frye during the Offer window of November 15, 2007, to December 28, 2007.

On January 4, 2008, Frye appeared for his continued preliminary hearing. Trial counsel, who was unable to attend, placed a note in Frye's file for the docket attorney covering the hearing. The note stated "—Probably should—Talk to him, from St. Louis, rec is tagged—Also has new misd, (go ahead & enter) WAIVE." Trial counsel interpreted his note during the post-conviction hearing. He testified that his note indicated that the Offer was included in the file and should be discussed with Frye. By this time, however, the Offer had expired. Frye testified that the docket attorney did not advise him of the expired Offer at the time of the preliminary hearing. Trial counsel interpreted his note's reference to "new misd" as referring to the fact that Frye had received another charge. Frye testified during his post-conviction hearing that he received another misdemeanor driving while revoked charge on December 30, 2007, although the record does not reflect where this charge was received. This was two days after the Offer expired. It is unclear how trial counsel knew of Frye's new charge, though we surmise Frye must have had a discussion of some sort with his counsel between December 30, 2007, the date of the new charge, and January 4, 2008, the date of the preliminary hearing.

On March 3, 2008, Frye entered an "open" guilty plea to the class D felony of driving while revoked. The new charge Frye received on December 30, 2007, was not discussed or disposed during the guilty plea hearing. The State recommended a

---

4. Frye testified at the post-conviction hearing that his post-conviction counsel sent him a copy of the Offer while he was incarcerated.

three year sentence, deferred, with ten days shock time. This was identical to the first of the two options that had been described in the Offer. The sentencing court did not accept the State's recommendation, however. Frye was sentenced on May 5, 2008, to three years' imprisonment in the Missouri Department of Corrections.

On June 9, 2008, Frye filed a *pro se* motion seeking post-conviction relief pursuant to Rule 24.035 ("Motion"). Frye's Motion alleged that trial counsel was ineffective for failing to communicate the Offer. Following an evidentiary hearing, the motion court denied Frye's Motion. Frye appealed.

### Appellate Procedural History

In *Frye I*, Frye contended that the motion court clearly erred in denying his motion because he received ineffective assistance of counsel when trial counsel failed to inform him of the Offer which would have permitted Frye to plead to a misdemeanor instead of a felony, and which would have exposed him to a lesser range of sentencing than the sentence imposed following his guilty plea. *Id.* at 353.

We found that Frye established both defective performance by trial counsel and prejudice as required by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, we found that trial counsel's performance was deficient because he failed to communicate the Offer that was more favorable than the guilty plea terms Frye ultimately accepted. *Frye I*, 311 S.W.3d at 353–56. We also found that Frye demonstrated prejudice because there was a reasonable probability that Frye would have accepted the Offer to plead to a lesser charge, which would have exposed him to a maximum range of punishment that was less than the sentence ultimately imposed. *Id.* at 360–

61. In other words, we concluded that Frye demonstrated that there was a reasonable probability that "but for" his trial counsel's deficient performance, the outcome would have been different. *Id.* at 357–59 ("To demonstrate prejudice, the movant must show a reasonable probability that, but for his attorney's unprofessional errors, the result of the proceeding would have been different."). We deemed Frye's guilty plea withdrawn, and remanded the case for further proceedings. *Id.* at 361.

The State's application for transfer to the Missouri Supreme Court was denied. *Id.* at 350. The State's petition for writ of certiorari to the United States Supreme Court was granted. *Frye II*, 132 S.Ct. at 1399.

As noted, the United States Supreme Court vacated our opinion in *Frye I*. *Id.* at 1410–11. The Supreme Court agreed, as we had concluded, that the Sixth Amendment to the United States Constitution guaranteed Frye the effective assistance of counsel during plea negotiations. *Id.* at 1407–08. The Supreme Court also agreed, as we had concluded, that Frye established *Strickland's* performance prong, as trial counsel's failure to communicate a plea offer fell below the standard of reasonableness. *Id.* at 1410. However, the Supreme Court held that we erred "in articulating the precise standard of prejudice in this context." *Id.* The Supreme Court held that we "failed ... to require Frye to show that the first plea offer, if accepted by Frye, would have been adhered to by the prosecution and accepted by the trial court." *Id.* at 1411. In so holding, the Supreme Court refined the test for *Strickland* prejudice where ineffective assistance of counsel is claimed in connection with plea negotiations:

> In order to complete a showing of *Strickland* prejudice, defendants who

have shown a reasonable probability they would have accepted the earlier plea offer must also show that, *if* the prosecution had the discretion to cancel it or *if* the trial court had the discretion to refuse to accept it, ***there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented.***

*Id.* at 1410 (emphasis added).

As to the first component of this refined *Strickland* analysis, the Supreme Court agreed, as we had concluded, that:

There appears to be a reasonable probability Frye would have accepted the prosecutor's original offer of a plea bargain if the offer had been communicated to him, because he pleaded guilty to a more serious charge, with no promise of a sentencing recommendation from the prosecutor.[5]

*Id.* at 1411.

With respect to the balance of the refined *Strickland* analysis, the Supreme Court concluded that "[w]hether the prosecution and trial court [have the discretion to cancel or refuse to accept an earlier plea offer] is a matter of state law, and it is not the place of this Court to settle those matters." *Id.* at 1410–11. The Supreme Court remanded Frye's case to this court to determine these state law questions. *Id.* at 1411. If no such discretion exists as a matter of Missouri law, then it follows that Frye, having demonstrated a reasonable probability that he would have accepted the Offer, will have established prejudice as a matter of law. If, on the other hand, such discretion exists, then the ful-

crum turns to whether Frye has established a reasonable probability that the discretion would not have been exercised:

If . . . the prosecutor could have canceled the plea agreement, and if Frye fails to show a reasonable probability that the prosecutor would have adhered to the agreement, there is no *Strickland* prejudice. Likewise, if the trial court could have refused to accept the plea agreement, and if Frye fails to show a reasonable probability the trial court would have accepted the plea, there is no *Strickland* prejudice.

*Id.*

## Analysis

■ We held in *Frye I* that "a plea offer once accepted by the defendant can be withdrawn without recourse, unless . . . the plea agreement impaired the voluntariness of the guilty plea." *Frye I*, 311 S.W.3d at 359 (citing *Mabry v. Johnson*, 467 U.S. 504, 511, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), *disapproved of on other grounds by Puckett v. United States*, 556 U.S. 129, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009); *State v. Price*, 787 S.W.2d 296, 299–300 (Mo.App. W.D.1990)).[6] Frye does not contest, and in fact agrees, that "[p]rosecutors in Missouri have long exercised the discretion to withdraw plea offers." [Frye's Appellate Brief on Remand at p. 12 (citing *State v. Fladten*, 753 S.W.2d 327 (Mo.App. W.D.1988)) ]. In fact, a plethora of Missouri cases confirm that the State can withdraw a plea offer, even an accepted plea offer, at any time prior to the entry and acceptance of the plea by a trial court. *See, e.g., Griffith v. State*, 845

---

5. The United States Supreme Court expressly noted, however, that "[i]t may be that in some cases defendants must show more than just a guilty plea to a charge or sentence harsher than the original offer." *Frye II*, 132 S.Ct. at 1411.

6. We express no opinion as to whether this general principal forecloses a defendant's ability to assert a claim of denial of due process by virtue of prosecutorial vindictiveness in withdrawing a plea offer because that issue is not before this court.

S.W.2d 684, 688 (Mo.App. S.D.1993) ("Under *Mabry*, movant's inability to enforce the prosecutor's offer 'is without constitutional significance,' and there is no 'relevance' in the question whether the prosecutor was negligent or otherwise culpable in first making and then withdrawing his offer."); *Dehn v. State*, 895 S.W.2d 55, 58 (Mo.App. W.D.1995) (an "agreement reached by the defense counsel and the prosecutor would have merely been an executory agreement, the breach of which does not deprive an accused of liberty or any other constitutionally protected interest unless the agreement is embodied in the judgment of a court"); *Stokes v. State*, 688 S.W.2d 19, 22 (Mo.App. E.D.1985) ("We know of no duty imposed upon a prosecutor to keep a plea bargain open for any length of time...."). In accord with this principal, the few cases in Missouri which permit a defendant to claim a breach of a plea agreement involve circumstances where a plea based on an agreement *has been accepted by the court*, and the State then fails to perform at sentencing as required in the plea agreement. *See, e.g., North v. State*, 878 S.W.2d 66, 67 (Mo.App. W.D.1994).

■ We conclude, therefore, that as a general rule, Missouri law permits the State discretion to withdraw a plea offer, even an accepted plea offer, at any time prior to the offer's acceptance by the trial court. *State v. Copeland*, 928 S.W.2d 828, 840 (Mo. banc 1996) *overruled on other grounds in Joy v. Morrison*, 254 S.W.3d 885 (Mo. banc 2008) ("The general rule is that unless a plea agreement is embodied in the judgment of a court, a breach of such agreement by the state does not deprive an accused of liberty or any other constitutionally protected interest.").

■ It is equally clear that a trial court has the discretion to reject a plea agreement. "[T]he trial court has virtually unlimited discretion prior to acceptance of the plea to refuse any plea of guilty outright or to reject any plea bargain between the State and the defendant." *State v. Creamer*, 161 S.W.3d 420, 425 (Mo.App. W.D.2005). "[A] criminal defendant has no absolute right to have a guilty plea accepted, and a court may reject a plea in exercise of sound judicial discretion." *Copeland*, 928 S.W.2d at 840. "It is only after a plea agreement is accepted by a court that it must be enforced. Our rules specifically authorize trial judges to reject plea agreements." *Id.* (citing Rule 24.02(d)(4)). Rule 24.02(d) provides, in pertinent part:

2. *Disclosure of Plea Agreement—Court's Action Thereon.* If a plea agreement has been reached by the parties, the court shall require the disclosure of the agreement on the record in open court or, on a showing of good cause, in camera, at the time the plea is offered.... Thereupon the court may accept or reject the agreement or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.

. . . .

4. *Rejection of a Plea Agreement.* If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw defendant's plea if it is based on an agreement pursuant to Rule 24.02(d) 1(A), (C), or (D), and advise the defendant that if defendant persists in the guilty plea, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

■ Frye concedes that "Missouri courts have the discretion to reject plea agreements." [Frye's Appellate Brief on Remand, p. 13]. Frye claims that we acknowledged a caveat to this general rule in *Frye I*. We did note in *Frye I* that "had Frye been advised of the Offer, and had he accepted the Offer, the trial court would have been bound to accept the guilty plea *for the misdemeanor charge*." *Frye I*, 311 S.W.3d at 360 (emphasis added). However, Frye misapprehends the import of this observation. We were in no way restricting the trial court's discretion to accept or reject plea agreements. We were merely observing that the trial court could not have exercised control over the State's willingness to charge Frye's offense as a misdemeanor in connection with the Offer, as the State has exclusive control over the charging of offenses. *Id; see also Fladten*, 753 S.W.2d at 328 (holding that "the particular charge to be filed against the accused is within the prosecutor's discretion"). In other words, although a trial court has the discretion to accept or reject a plea agreement, if it accepts a plea agreement, the trial court has no discretion to alter the offenses charged by the State.[7]

We conclude that subject only to constraints or limitations imposed by Rule 24.02(d), the trial court retained discretion to accept or reject a plea agreement based on the Offer.

Having resolved the state law questions remanded to this court for determination by *Frye II* in favor of finding that both the State and the trial court had the discretion to withdraw the Offer or to reject a plea agreement based on the Offer, the inquiry shifts to whether "there is a reasonable probability neither the prosecution nor the trial court would have prevented the [Offer] from being accepted or implemented." *Frye II*, 132 S.Ct. at 1410. The State argues that the record before us permits us to conclude that no such reasonable probability exists. Frye argues to the contrary.

■ The motion court did not find whether Frye demonstrated a reasonable probability that the State would not have withdrawn the Offer or that the trial court would have accepted a plea agreement based on the Offer. Rule 24.035(j) requires a motion court to "issue findings of fact and conclusions of law on all issues presented, whether or not a hearing is held." Rule 24.035(k) provides that:

> Appellate review of the trial court's action on the motion filed under this Rule 24.035 shall be limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous.

"This review, however, presupposes that the motion court [made required findings.] Without findings and conclusions by the motion court, the reviewing court must engage in de novo review, which is not permitted under Rule 24.035(k)." *Smith v. State*, 342 S.W.3d 899, 900 (Mo.App. E.D. 2011) (citing *Hollingshead v. State*, 324 S.W.3d 779, 781 (Mo.App. W.D.2010)).

We mean to imply no criticism of the motion court. The motion court cannot be faulted for failing to make findings about issues that did not become material to Frye's Rule 24.035 motion until the United

---

7. The trial court may, however, have discretion with respect to the disposition of an offense, depending on the type of plea agreement reached. *See* Rule 24.02(d)1(B). And, if a trial court signals an intent to reject plea agreements under Rule 24.02(d)1 (A), (C), or (D), the defendant must be given a chance to withdraw the plea, and advised that if he persists in pleading guilty, the disposition may be more or less favorable than that contemplated by the plea agreement.

States Supreme Court's ruling in *Frye II*. Regardless, we are not permitted to conduct appellate review of factual determinations that have not been made by the motion court, even excusably.[8] *See Brantley v. State*, 365 S.W.3d 278, 279 (Mo.App. S.D.2012) (remanding case to motion court for findings not made but now required by *Frye II* ).

## Conclusion

Because the motion court did not find whether Frye demonstrated a reasonable probability that the State would not have withdrawn the Offer and that the trial court would not have rejected a plea agreement based on the Offer, we are compelled by Rule 24.035(k) to reverse the motion court's judgment and to remand this matter to the motion court. On re- mand, the motion court shall conduct such proceedings as are necessary to issue findings and conclusions as contemplated by Rule 24.035(j) on those points fairly presented by Frye's Rule 24.035 Motion in light of *Frye II* and which have not already been determined as a matter of law.[9]

All concur.

---

8. The United States Supreme Court hinted in *Frye II* that Frye may have a difficult time sustaining his burden to demonstrate a reasonable probability that neither the State nor the trial court would have exercised its discretion to withdraw or reject the Offer in light of the fact that Frye obtained an additional driving while revoked charge while the subject charge was pending. *Frye II*, 132 S.Ct. at 1411; *see also, Frye I*, 311 S.W.3d at 359 n. 4. However, the additional charge was not received until after the expiration of the Offer, and the record does not indicate whether the State or the trial court knew of the additional charge on the date Frye pled guilty and was sentenced. *Frye I*, 311 S.W.3d at 360 n. 6. We observed in *Frye I* that the available record did not suggest that Frye's new charge was discussed or disposed at the time of his guilty plea, perhaps indicating that the State and the trial court were unaware of the new charge. *Id.* at 352.

9. As herein addressed, it has already been determined that: (i) Frye's trial counsel's failed to communicate the Offer; (ii) Frye thus established that trial counsel's performance was deficient as required by *Strickland's* performance prong; and (iii) Frye demonstrated a reasonable probability that he would have accepted the Offer. These determinations constitute the law of the case. *Walton v. City of Berkeley*, 223 S.W.3d 126, 128–29 (Mo. banc 2007) ("The doctrine of law of the case provides that a previous holding in a case constitutes the law of the case and precludes relitigation of the issue on remand and subsequent appeal."). All that remains is for the motion court to determine, consistent with the refined *Strickland* prejudice prong announced in *Frye II*, whether Frye has established a reasonable probability that the State would not have withdrawn the Offer and that the trial court would have accepted a plea agreement based on the Offer. Should the motion court so find, then it will have concluded that Frye has established *Strickland* prejudice, requiring the motion court to determine an appropriate remedy. *See Lafler v. Cooper*, 566 U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). If the motion court does not so find, then it will have concluded that Frye has not established prejudice, requiring denial of his Rule 24.035 Motion. On remand, Frye should be afforded an evidentiary hearing if he requests to permit him to present evidence relevant to the issues to be determined on remand, as they are not issues about which Frye could reasonably have been expected to present evidence during his initial evidentiary hearing.